The next case this morning is 519-0438 People v. Yarbrough. Arguing for the defendant appellant is Richard Whitney. Arguing for the state is Max Miller. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning. Good morning. Good morning, Your Honor. Mr. Whitney, are you prepared to begin? I am, Your Honor. Please do so. Good morning, Your Honors. May it please the court, counsel. Richard J. Whitney, representing defendant appellant John E. Yarbrough. Your Honors, in this appeal, Mr. Yarbrough asked this court to reverse the circuit court's dismissal of his post-conviction petition at the second stage, a petition in which he sought to withdraw his guilty plea on several grounds, but only one of which is central here. Namely, that before he pled guilty, he was never informed that his indefinite, possibly life sentence due to the stringent housing requirements that sex offenders must satisfy before they are actually released from prison. As collateral consequences go, it would be difficult to imagine a more serious and life-changing one than this. This was a poison pill concealed inside an otherwise rational and unobjectionable plea agreement. Now, Mr. Yarbrough seeks reversal under several different legal theories, but they are all grounded on this central proposition. Namely, that this was not and could not have been a knowing, voluntary, and intelligent plea where Mr. Yarbrough did not know about the so-called violating an offender at the door policy that threatens to turn his 20-year sentence into a possible lifetime sentence. The central facts underlying this claim are undisputed. No one has disputed that the policy exists and that it has the effect of extending the sentences of many indigent sex offenders indefinitely. It's based on statute, and its existence was acknowledged by our Supreme Court in the Cordry case and the Federal District Court in the Murphy and Stone cases. No one has contended that Mr. Yarbrough really did know about the policy before he pled guilty. No one has argued that he's not indigent or that he does have suitable housing and is therefore unlikely to be affected by the policy. So, this appeal presents a straightforward legal question, and whether it's analyzed under the general principle that all guilty pleas must be voluntary, knowing, and intelligent, or under the well-settled rule that a misapprehension of facts or law are valid grounds for withdrawing a guilty plea, or under the contract doctrine of unilateral mistake of fact, or under his claim that he was denied the effective assistance of plea counsel for failing to warn him about this serious collateral consequence, it all leads to the same conclusion. It's a miscarriage of justice to permit a guilty plea to stand when the agreement contains a hidden term of such enormous consequences. In addition, because post-conviction counsel failed to recognize and develop these viable arguments for relief, he's also presented in the alternative a compelling argument here that he was denied the reasonable assistance of post-conviction counsel, as we've argued in the brief. So, even if this court is not completely persuaded by what I think is a compelling argument for relief based on the denial of his post-conviction petition, certainly I think we have an even stronger underlying argument that, at the very least, post-conviction counsel should have developed these arguments in a manner similar to the way I did in this appeal, such that it should have been tested adequately at the circuit court level, and it should go be remanded for that reason. Review of all of these issues, both the second stage post-conviction dismissal itself and the unreasonable assistance of post-conviction counsel, is reviewed de novo. With regard to your argument that the court, no one for that matter, apprised the defendant of what the MSR truly would require of him prior to his accepting the plea, what obligation, what requirement is there of the court and of, for that matter, the attorneys involved to do such an appraisal of those requirements? Yeah, I think we need to draw a sharp distinction, Your Honor, between the duty of the court here and the duty of defense counsel. We have never contended in this appeal, and do not contend now, that there was some affirmative duty of the court to admonish him about this collateral consequence. I think the case law is pretty clear. As long as the court complies with Rule 402 and gives the other admonitions required by the law, it doesn't extend to collateral consequences. We agree with that. When it comes to the obligations of counsel, however, I think that's a different situation. You can look at cases like Padilla v. Kentucky and the Hughes case, the other cases we've cited in the brief, that show that the trend in the law here is that counsel does have an affirmative obligation to warn of serious collateral consequences. And just to compare to Padilla, for example, I would maintain certainly that the collateral consequence of having a life sentence in prison is a lot when you expect it, a 20-year or 17-year sentence with good time, is much more serious than the consequences of deportation, as serious as those were. Yet the U.S. Supreme Court in Padilla held that, yeah, if there's a risk of deportation, counsel has a duty to warn of that. And then other changes have taken place in Illinois law, et cetera, in response to that. Here, this is at least as severe and more severe that you have this risk of an indefinite sentence. And I think if you look at that, you look at the Hughes case, I think it clearly supports that notion that defense counsel has that duty. And again, it's undisputed here that defense counsel did not warn him of this serious collateral consequence. Counsel, counsel, that's not an if, commas. You don't know what his situation will be at the time that he should, yeah. So then what you're suggesting is we should probably, you want to make that a rule that everyone should be advised of this collateral possibility. So that would be another add-on. Is that what you're suggesting? Or how do we know that he won't be a homeless at the end of time, you know, of his time? Are we a little early on that? Well, your honor raises a good point. And there has been some discretion about whether this is important. It's important to understand that our argument is not predicated on the notion that we know what's going to happen in 2032 or whenever he qualifies for his release. He might win the lottery. Right. That's true. It could be that the Seventh Circuit will rule on Murphy and say, hey, you know what? We think it is constitutional. A lot of things can happen, right? But our argument is not predicated on the certainty that this will happen. It's predicated on the notion, the proposition that there is a serious risk that this will happen. And he did not know about that serious risk before he pled guilty. As of right now, he falls within what we might call the potential Murphy class. No one's disputed that he's indigent. No one's disputed. That would apply to almost all indigents, wouldn't it? So we don't know. Well, it's much more stringent for the category of sex offenders. Your rule would be sex offenders only, but what would we add if we have to advise him? How would the attorney know to advise his client that he's indigent? Well, he's indigent, so he has an appointed attorney. That's one, probably. And then the other rule would be nobody cares for the guy anymore. They don't like him. What would an attorney do? What I would suggest as a result of this is that the attorney would have an affirmative obligation to let indigent, well, to let any sex offenders know if they're... Well, we assume it's indigent by who the attorney is, right? That's true. Oh, right. True. So, but in any event, if they're sex offenders... Okay. Now, so we got indigents, everyone that's indigent, and everyone that's a sex offender, this is a requirement. Yes. Defense counsel would have to let them know there's this thing called the violating an offender at the door policy. And if you do not have appropriate... Okay. And who would say he doesn't have a wife, or he doesn't have any money? That's a problem. And how would you make the rule say that they have to give that advice? Well, it would have to come from this court or another division of the... I'm trying to draft the rule. How would you draft the rule? The rule would be that defense counsel... I see that my time has expired. I assume you want me to... That's okay. Please continue. Yes. Thank you. That defense attorneys have an affirmative duty to warn sex offenders that indigent sex offenders, that their mandatory supervised release term is subject to the violating an offender at the door policy, and that this could extend their prison term indefinitely. If they have a healthy wife, no. But if they have an unhealthy wife, yes. Is that what you're saying? I think it would have to be across the board to make sense. Because even if, let's say, the sex offender did have housing at the time, but 20 years from now, he may not have it. If he had real housing... It would have to be across the board. So, in other words, it could apply to any sex offender. It doesn't necessarily mean that they have to be indigent at the time of incarceration. Any sex offender that would be subject to this mandatory supervised release, which I think is all of them. So, yes. Effectively, any sex offender. Yes. Okay. I do see your time is up. If you'd like a second or two to summarize your argument, then you'll also have time and reply. I'll say for a rebuttal, we are asking for remand, obviously. If it's remand under the main argument, then it would go to a third stage. If it's remand under our argument that post-conviction counsel should have developed the argument, it would be remanded for a second stage. Okay. Thank you. Thank you, Mr. Whitney. Mr. Miller, you need to unmute yourself. There you go. And you may begin. Thank you, Your Honor. May it please the court. Counsel, my name is Max Miller and I represent the people of the state of Illinois. Your Honors, it's the state's position that the myriad of issues raised by a defendant can really be addressed with two simple points. Defendant's post-conviction petition was properly dismissed where the record itself demonstrates that defendant's plea was knowing, voluntary, and intelligent. So, how does it demonstrate this? First, because there's nothing improper about the procedure of the plea. Defendant argues that his didn't understand that the MSR period of natural life could potentially lead to incarceration for life. But it's well established that this is a collateral issue. The case law here isn't even disputed. Since it's a collateral issue, the trial court had no duty to admonish him regarding it. He was told that the MSR period could extend to a period of his natural life, and above that, that there would be requirements necessary to secure that. And it wasn't even necessary that trial court mentioned that. Because the defendant was properly admonished, it's the state's position that he cannot now claim he didn't knowingly plead. This court doesn't need to consider the alleged subjective knowledge of the defendant. We have to consider was he properly admonished. And he was, as the defendant admits, properly admonished as to all direct consequences. And as this is borne out more in the briefs, but this is enough to establish that the plea should itself be considered knowing. Now, since the record shows that, defendants only recourse is really to somehow save this under ineffective assistance of counsel claim. But the state's response to that is that there's no possible prejudice suffered by defense counsel's actions here. Defendant has to demonstrate that a decision to reject this plea bargain would have been rational under the circumstances. An allegation alone is insufficient to establish prejudice. And the defendant admits in his brief that he presented no facts to support the claim he felt compelled to abandon his claim of innocence. What we have here is a potential maximum aggregate sentence of 105 years if defendant had been convicted. This is to be contrasted with the 20-year sentence that came from the plea agreement. And this is based on a claim of innocence that can't really rationally be said to exist considering the state's factual basis, which obviously didn't go to trial because defendant pled guilty. Because there's no air anywhere in the court proceedings, and defendant's decision to reject such a plea agreement can't be said to be rational, it's the state's position that on those two bases, really all these issues, this court can affirm the judgment of the dismissal of this petition. All of the other claims really require that this plea be unknowingly made. And it's the state's position that, again, just the fact that the plea, there was nothing erroneous about the punishment that this court can judge that it was a knowing plea agreement. And because there was no prejudice, then it shouldn't be an effective assistance to counsel. And again, this is a collateral consequence that's not even affected the defendant yet. He's not completed his prison term. What the defendant seems to be asking is essentially that this court, you know, change Illinois law to be more in line with these federal cases, break with precedent, but it's the state's position that this court has a very strong interest in protecting the procedure by which a defendant is admonished and allowing that there'd be some finality to that, you know, he was advised of all the direct consequences, therefore, the plea was knowing. What about the specific facts of this case, with regard to this particular defendant's ability to understand what he was getting involved in? I think there's some testimony with regard to him being on the borderline low, mentally retarded scale, and correct me if I'm wrong, maybe I'm getting confused with something else, but I'm pretty sure it's this case. If he's unable to understand, you know, at the same level, someone not suffering from his mental condition would be, is there perhaps a heightened duty of counsel to ensure that he understands exactly what he's going to be, what will be required of him in order to be released after his 17 year base prison sentences? I would say there's nothing to suggest that in this case, that that was necessary. So the trial court noted it received two reports regarding the defendant, and one referenced the defendant's ability to understand the pending legal proceedings, and the other related to his mental state at the time of the offense. Now, defendants stated on the record that he didn't have any problem understanding what was going on, he was not prescribed any medication for any mental health issues, and counsel for the defendant attested himself that he raised an initial issue regarding potential fitness, but it had since been resolved, and it was counsel's opinion at the time of the plea that his client remained fit with no issues regarding his fitness. So your honor, I would just say that I think the record establishes that he was more than fit to enter that plea fully knowing and voluntarily. And if your honors have any other questions, I'd be happy to answer them, but otherwise the state would just rest on its brief for the remaining issues. Justice Welch, Justice Moore, any questions? No further questions. Thank you, your honors. Thank you, Mr. Miller. Mr. Whitney, if you'll unmute yourself, you may reply. You have five minutes for that. Thank you, your honor. Yeah, your honor, again, we concede that this has nothing to do with whether the trial court admonished Mr. Yarbrough correctly. There is no duty here. We agree, but what the state has failed to answer is, number one, that there is an independent basis for raising standalone claims that you should be allowed to make when it's based on facts or law, whether it's based on facts or law as under Davis. And as we cited in the reply brief, under Davis, under Morial, under I think we cited a third case, the Pullen case, the Illinois Supreme Court in 2000, all showed that you can have a standalone claim that your plea was based on a mistake of fact or law. It doesn't have to be grounded in an effective assistance of counsel, and it doesn't have to be grounded on the court's failure to admonish. If it's not knowing, intelligent, voluntary, if it's based on a mistake of fact or law, you can still raise the claim, and that is a valid basis for withdrawing a guilty plea. So that's one point that I wanted to make with respect to that. Responding further to Justice Welch's concern, I think another thing that we need to do here is look a little bit at the Hughes case, People v. Hughes, in which our Supreme Court, our Illinois Supreme Court, did again impose an affirmative duty on defense counsel under very similar circumstances. In that case, it was sex offenders who might be subject to the Sexually Violent Persons Commitment Act, and the court held that there is an affirmative duty of defense counsel to warn those categories of offenders that, yes, you may be subject to civil commitment term of indefinite duration after you complete your prison sentence. And it's very similar to what we have here, not on all fours, but similar in terms of the consequences, certainly. And I think when you look at this trend in law with Hughes and Padilla, yes, because the courts are starting to recognize there are these serious collateral consequences, we're not going to put that duty on the court to warn of them unless, you know, unless the General Assembly acts and imposes on them. But we are going to impose that on defense counsel. Defense counsel should know about these in Hughes. And when it's as serious as, gee, your 20-year sentence could actually become a life sentence if you happen to be unfortunate enough to not have acceptable housing when you're ready for release, there has to be an affirmative duty here. I don't think it needs to be that complex. I think it is as simple as an affirmative duty for defense counsel to warn the sex offenders that fall within this category that because of the difficulty of getting housing, you could be subject to this violating offender-at-the-door policy. So you need to know about that before you plead guilty. I don't think it has to be more complex than that. And I think this court would do well to follow the same basic logic of our Supreme Court in Hughes in doing that. The other point I just wanted to mention very briefly is that as far as the unreasonable assistance of post-conviction counsel argument or alternative argument, I would urge the court to take a close look at McDonald, that third district case that we cited. The state has never responded to that. In that case, it was much less severe consequences because that defendant could only serve an additional four-year term. He had just a straight four-year term. And the third district held that post-conviction counsel should have developed that argument, should have really raised it correctly in the circuit court. Same logic applies here. So again, if you're not persuaded of the underlying claim, we would urge you to look to reverse and remand based on the fact that post-conviction counsel did not develop these arguments in the way that they should have. And it should go back for that additional reason. If there's no other questions, I'll end it here and thank the court for its time and attention. Justice Welch, Justice Moore, any further questions? No questions. All right. Thank you, Mr. Whitney. Thank you, Mr. Miller, for your arguments today. The court will take this matter into consideration and issue its ruling in due course.